**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 25-CV-25982-MOORE/Elfenbein

***In re***

**PETRUS ADVISERS**
**INVESTMENTS FUND, L.P.**,

Applicant,

**Pursuant to 28 U.S.C. § 1782 for**
**Judicial Assistance in Obtaining**
**Evidence for Use in a Foreign Proceeding**.
_______________________________________/

**OMNIBUS ORDER**

**THIS CAUSE** is before the Court on Applicant Petrus Advisers Investments Fund, L.P.'s ("Applicant") Application for Judicial Assistance in Aid of a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 (the "Application"), ECF No. [1]; Applicant's Motion to Grant 28 U.S.C. § 1782 Petition and Issue Subpoenas (the "Motion to Grant"), ECF No. [7]; and Applicant's Motion to Transfer Action (the "Motion to Transfer"), ECF No. [13]. Respondents, the Starwood Entities ("Starwood Entities"), filed a Response in Opposition to the Motion to Grant (the "Response"), ECF No. [14], and Applicant filed a Reply in Support of the Motion to Grant, ECF No. [21]. The Starwood Entities also filed a Response in Opposition to the Motion to Transfer, ECF No. [18], and Applicant filed a Reply in Support of Transfer, ECF No. [22]. The Honorable K. Michael Moore referred the matters to the undersigned "to take all necessary and proper action as required by law." ECF No. [4]. For the reasons explained below, the Application, **ECF No. [1]**, and Motion to Grant, **ECF No. [7]**, are **GRANTED**, and the Motion to Transfer, **ECF No. [13]**, is **DENIED AS MOOT**.

## I. BACKGROUND

### A. The Parties and the Austrian Proceeding

In the Application, Applicant explains that it is a minority shareholder of CA Immobilien Anlagen Aktiengesellschaft ("CA Immo"), an Austrian joint-stock company headquartered in Vienna, Austria. *See* ECF No. [1] at 2–3, 6. CA Immo's core business involves leasing, managing, and developing office buildings, and the company maintains branch offices in several central European countries. *See id.* at 3. Applicant states that CA Immo's shareholders meet periodically at general meetings and vote on matters including the distribution of profits, appointment and dismissal of members of the company's supervisory board, approval or disapproval of the management of the company, and requests by shareholders for "Special Audits" into questioned actions of corporate management. ECF No. [1] at 4. CA Immo's supervisory board, which consists of non-executive directors, appoints and supervises the company's executive management. *See id.* At the time of the general meeting relevant here, three of four shareholder representatives on the supervisory board were appointees of CA Immo's majority shareholder, SOF-11 Klimt CAI S.à r.l. ("SOF-11"). *See id.* at 4, 6.

SOF-11 is CA Immo's majority shareholder, while Applicant is one of CA Immo's minority shareholders. *See* ECF No. [1] at 2, 6. Applicant alleges that SOF-11 is ultimately owned and controlled by Starwood Capital, an American private investment firm headquartered in Miami Beach, Florida. *See id.* at 2, 6. Applicant further alleges that, at the time of CA Immo's 2024 General Meeting, Jeffrey G. Dishner, Sarah Broughton, and David Smith were disclosed representatives of Starwood Capital on CA Immo's supervisory board and were also senior executives or directors of Starwood Capital. *See id.* at 6.

Under the Austrian corporate-law framework described in the Application, a shareholder who suspects corporate misconduct may seek a Special Audit and submit the requested audit to a vote at a general meeting. *See* ECF No. [1] at 5. According to Applicant, Austrian law restricts a shareholder from voting on certain matters when the shareholder has a conflict of interest, including where the actions of the shareholder itself, persons it controls or influences, or persons controlling or influencing it are placed at issue. *See id.* at 5. Applicant represents that these conflict-of-interest restrictions also apply to votes concerning requests for Special Audits. *See id.*

At CA Immo's May 2, 2024 General Meeting, Applicant states that it proposed resolutions requesting four Special Audits into alleged misconduct by CA Immo's management and alleged improper influence by SOF-11 and Starwood.[1] *See* ECF No. [1] at 6–7. Applicant alleges that SOF-11 was conflicted from voting on the relevant resolutions because the proposed Special Audits implicated SOF-11's conduct and that of Starwood executives and appointees. *See* ECF No. [1] at 8. Applicant further alleges that SOF-11 nevertheless voted to approve CA Immo's management, to reject the Special Audit proposals concerning its conduct and that of its appointees, and to re-nominate Jeffrey Dishner to the supervisory board. *See id.*

On June 3, 2024, Applicant commenced an action before the Commercial Court in Vienna, Austria, Case No. 25 Cg 14/24k, which the Parties refer to as the "2024 Austrian Special Audit

[1] One category of requested audit concerned aspects of CA Immo's capital-rotation program beginning in September 2018, including the relationship between asset sales and acquisitions and CA Immo's 2023 remuneration policy for Management Board members Keegan Viscius and Dr. Andreas Schillhofer. *See* ECF No. [1] at 6. Another concerned disclosures relating to former supervisory board members John Nacos and Michael Stanton, the October 2022 resignations of supervisory board members who had been formally independent from Starwood, and the composition of the supervisory board. *See id.* at 6–7. A third concerned, among other things, the nomination and compensation of former Starwood employee Keegan Viscius, changes in the composition of CA Immo's executive management, and the nomination and resignation of former CEO Silvia Schmitten-Walgenbach. *See id.* at 7. A fourth concerned the alleged responsibility of Jeffrey Dishner in connection with his service on CA Immo's Supervisory Board and alleged advantages afforded to Starwood Capital that Applicant contends harmed CA Immo. *See id.*

Proceeding." ECF No. [1] at 2; ECF No. [7] at 3. In that proceeding, Applicant sued CA Immo and seeks, among other things, to nullify the resolutions rejecting the four Special Audit requests and to have the requested Special Audit resolutions declared passed. *See* ECF No. [1] at 2, 6–8. Three of the requested audits concern actions of CA Immo's supervisory board from 2018 through 2023, while the fourth concerns actions of its management board during the 2023 business year. *See id.* at 2. Applicant also seeks to nullify resolutions approving the management of CA Immo by its management and supervisory board members during 2023 and the resolution re-nominating Jeffrey Dishner as a member of the supervisory board. *See id.* at 3, 7–8.

**B. The Requested Discovery**

For use in the 2024 Austrian Special Audit Proceeding, Applicant seeks documentary and testimonial evidence that it represents is within the possession, custody, or control of the Starwood Entities located in Miami Beach, Florida. *See* ECF No. [1] at 3, 8–9. According to Applicant, those entities form part of the ownership and control structure through which Starwood ultimately owns or controls SOF-11, and the requested evidence concerns the alleged influence and conduct at issue in the 2024 Austrian Special Audit Proceeding. *See id.* More specifically, Applicant seeks substantially similar discovery from ten entities: (1) Starwood Capital Group Management L.L.C.; (2) Starwood Capital Group Holdings GP L.L.C.; (3) SCGG II GP, L.L.C.; (4) SCGG II LP, L.P.; (5) Starwood Capital Group Global II, L.P.; (6) Starwood XI Management, L.P.; (7) Starwood XI Management GP, L.L.C.; (8) SCG Klimt Special, L.P.; (9) SCG Klimt Special GP, L.L.C.; and (10) Starwood Capital Group Global I, L.L.C. (collectively, the "Starwood Entities" or "Discovery Targets"). *See* ECF Nos. [1] at 9; [1-2]; [1-3]; [1-4]; [1-5]; [1-6]; [1-7]; [1-8]; [1-9]; [1-10]; [1-11]. Applicant explains that substantially similar requests are directed to the affiliated entities because it is unknown which entity or entities within SOF-11's ownership chain possess the

relevant documents. *See id.*

Applicant seeks both records and testimony from the Starwood Entities and represents that it intends to serve subpoenas on the entities' records custodians followed by subpoenas for testimony from one or more corporate representatives.[2] *See* ECF No. [1] at 8–9 & n.7. Applicant represents that each Discovery Target and proposed deponent is found within this District, that none of the Starwood Entities is a party to the 2024 Austrian Special Audit Proceeding, and that none is within the Austrian court's subpoena power. *See* ECF No. [1] at 8–9. Applicant further represents that all of the Starwood Entities maintain their principal places of business in Miami Beach, Florida, and are qualified to conduct business in Florida. *See id.* at 13.

Applicant submitted a declaration from Austrian counsel in support of its Application. *See* ECF No. [1-12]. According to Applicant's Austrian counsel, Austrian law does not prohibit Applicant from obtaining or relying upon evidence gathered through § 1782, and the Commercial Court in Vienna may receive documents and deposition transcripts obtained through United States judicial assistance as exhibits, attachments to written submissions, or evidence offered at a hearing. *See* ECF No. [1-12] at ¶¶7–8. Applicant's Austrian counsel further represents that no ruling in the 2024 Austrian Special Audit Proceeding prohibits foreign discovery and that the Austrian court would be receptive to evidence procured through § 1782. *See id.*

**C. Prior § 1782 Proceeding**

This is not the first § 1782 proceeding between Applicant and Starwood-related entities.

[2] Applicant identifies Jeffrey G. Dishner, Laura M. Rubin, Sarah Broughton, David Smith, and Barry S. Sternlicht as managing agents whom it seeks to depose in a corporate capacity and represents that each served on CA Immo's supervisory board during some portion of the relevant period. *See id.* at 9 n.6. Importantly though, Applicant has not submitted any proposed subpoenas to these managing agents with its Application or Motion to Grant, so the Court does not decide whether Applicant may issue those subpoenas in this Omnibus Order. Rather, the Court only addresses those subpoenas attached to the Application and Motion to Grant.

*See* ECF No. [1] at 1–2; ECF No. [14] at 2–5. In August 2022, Applicant filed a separate § 1782 proceeding in this District, *In re Application of Petrus Advisers Investments Fund, L.P.*, Case No. 22-CV-22437-BLOOM ("Petrus I"), seeking discovery from seven Starwood-affiliated entities for use in three then-pending Austrian proceedings. *See* ECF No. [1] at 1–2; ECF No. [14] at 4–5. The Court granted Applicant's § 1782 application in *Petrus I*, after which those Starwood entities moved to vacate the order and quash the subpoenas. *See* ECF No. [1] at 1–2; ECF No. [7] at 2; *see also Petrus I*, ECF No. [6]. The Magistrate Judge entered a Report and Recommendation recommending that the motion to vacate and objections to the subpoenas be denied, and the District Judge subsequently adopted that recommendation. *See* ECF No. [1] at 2; ECF No. [7] at 2; *see also Petrus I*, ECF Nos. [24], [34].

The Parties sharply disagree about the significance of what followed in *Petrus I*. The Starwood Entities represent that the prior proceeding generated 106 docket entries and six hearings and ultimately required the production of 8,842 documents totaling 32,576 pages. *See* ECF No. [14-1] at ¶¶11–15. They further represent that compliance required more than 2,000 hours of attorney and in-house e-discovery professional time and tens of thousands of dollars in e-discovery costs. *See* ECF No. [14-1] at ¶¶29–31. The Starwood Entities also assert that Applicant cancelled a scheduled corporate-representative deposition shortly before it was scheduled to occur and did not reschedule that deposition. *See* ECF No. [14-1] at ¶¶20–23. Applicant disputes the implication that the length and expense of *Petrus I* resulted from unreasonable conduct on its part and attributes much of the prior motion practice and discovery expense to what it describes as Starwood's repeated resistance to discovery orders. *See* ECF No. [21] at 9–11. Applicant also explains that it postponed the prior deposition because adequate documentary discovery had not yet been produced and represents that, in this proceeding, it is willing to engage in good-faith

discussions to narrow the discovery and minimize expense and future disputes. *See id.* at 10–11 & n.11.

The Parties also dispute the extent to which the proposed discovery here duplicates discovery produced in *Petrus I*. See ECF No. [14] at 10–14; ECF No. [21] at 7–8. According to the Starwood Entities, the proposed subpoenas contain 284 document requests, 161 of which — or approximately 56.7 percent — overlap to some extent with requests made in *Petrus I*, including 89 requests that they characterize as exact matches and 72 that they characterize as partial matches. *See* ECF No. [14-1] at ¶¶32–34. Applicant responds that the 2024 Austrian Special Audit Proceeding is a new and separate Austrian action involving a different relevant time period and maintains that the requested evidence concerns Starwood's own conduct and documents, rather than merely duplicating evidence previously sought from foreign entities. *See* ECF No. [21] at 5–8 & n.7.

The Starwood Entities further represent that the discovery produced in *Petrus I* may now be used in the 2024 Austrian Special Audit Proceeding pursuant to an agreed amendment to the protective order entered in September 2025. *See* ECF No. [14-1] at ¶27. Applicant acknowledges its ability to use that material but explains that the merits of the Austrian proceedings have not yet required it to submit the documentary discovery and represents that it intends to submit relevant § 1782 evidence when procedurally appropriate. *See* ECF No. [21] at 7.

**D. This § 1782 Proceeding**

Applicant filed the present Application on December 18, 2025, seeking authorization to obtain documentary and testimonial evidence from the Discovery Targets for use in the 2024 Austrian Special Audit Proceeding. *See* ECF No. [1] at 1; ECF No. [1] at 15. Applicant thereafter filed the Motion to Grant, asking the Court to grant the Application and authorize issuance of the

proposed subpoenas. *See* ECF No. [7] at 1. Applicant states that it elected to litigate the request on notice rather than proceed *ex parte* because substantially related Starwood entities had resisted § 1782 discovery in *Petrus I*. *See* ECF No. [7] at 1–2.

The Starwood Entities filed their Response opposing the Motion to Grant and the Application. *See* ECF No. [14]. Despite their opposition, they do not dispute that Applicant satisfies the four statutory prerequisites of § 1782 and do not contest the second and third discretionary factors identified in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). *See* ECF No. [14] at 9–20; ECF No. [21] at 1. Instead, they principally contend that the first and fourth *Intel* factors weigh against relief because Applicant allegedly can seek relevant evidence from CA Immo or SOF-11 abroad and because the discovery sought from the Starwood Entities is duplicative, intrusive, expensive, and unduly burdensome. *See* ECF No. [14] at 9–20.

In its Reply in support of its Motion to Grant, Applicant maintains that the Discovery Targets are nonparticipants outside the Austrian court's jurisdiction, distinguishes the authorities relied upon by the Starwood Entities, and contends that request-specific burden and cost-shifting disputes are premature before subpoenas issue and objections are made. *See* ECF No. [21] at 1–11. Applicant also reiterates that it is willing to confer in good faith regarding the scope of discovery to minimize expense and future disputes. *See id.* at 7, 11.

While briefing concerning the § 1782 relief was ongoing, Applicant filed the Motion to Transfer under 28 U.S.C. § 1404(b), Southern District of Florida Local Rule 3.8, and Internal Operating Procedure 2.15.00, seeking transfer of this proceeding to the judicial officer or officers who presided over *Petrus I*. *See* ECF No. [13] at 1, 8. Applicant argued that the substantial factual, legal, party, and discovery overlap between the two proceedings made transfer more efficient and would avoid unnecessary duplication of judicial labor. *See id.* at 2–8.

Opposing the Motion to Transfer, the Starwood Entities argue that *Petrus I* is no longer active, that the judges who previously presided over that matter are no longer paired, and that the present Court has already familiarized itself with the issues through briefing. *See* ECF No. [18] at 1–5. In its Reply in support of its Motion to Transfer, Applicant maintains that the extensive overlap with *Petrus I* and the judicial resources previously devoted to that matter favor transfer despite the present posture of the two cases. *See* ECF No. [22] at 1–5. The Motions are fully briefed and ripe for review. *See* ECF Nos. [1], [7], [13], [14], [18], [21], [22].

## II. LEGAL STANDARD

### A. Judicial Assistance Under 28 U.S.C. § 1782

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp.*, 542 U.S. at 247. The "history of Section 1782 reveals Congress' wish to strengthen the power of district courts to respond to requests for international assistance." *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1269 (11th Cir. 2014) (emphasis and quotation marks omitted).

"A district court has the authority to grant an application for judicial assistance if the following statutory requirements in § 1782(a) are met: (1) the request must be made 'by a foreign or international tribunal,' or by 'any interested person'; (2) the request must seek evidence, whether it be the 'testimony or statement' of a person or the production of 'a document or other thing'; (3) the evidence must be 'for use in a proceeding in a foreign or international tribunal'; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance." *In re Clerici*, 481 F.3d 1324, 1331–32 (11th Cir. 2007) (footnote omitted) (quoting § 1782(a)). Evidence is for use in a foreign proceeding if an applicant

"has the practical ability to inject" it into the proceeding and it can "be employed with some advantage or serve some use in the proceeding." *See In re Application of Salem*, No. 23-CV-23186, 2024 WL 4464288, at *10 (S.D. Fla. Aug. 28, 2024) (quotation marks omitted), *R.&R. adopted sub nom. In re Salem*, No. 23-CV-23186-KMM, 2024 WL 4314771 (S.D. Fla. Sept. 27, 2024); *In re Pons*, 614 F. Supp. 3d 1134, 1144 (S.D. Fla.), *aff'd sub nom. Pons v. AMKE Registered Agents, LLC*, 835 F. App'x 465 (11th Cir. 2020). "If these requirements are met, then § 1782 'authorizes, but does not require, a federal district court to provide assistance.'" *In re Clerici*, 481 F.3d at 1332 (quoting *Intel*, 542 U.S. at 255); *see also United Kingdom v. United States*, 238 F.3d 1312, 1319 (11th Cir. 2001) ("[A] district court's compliance with a § 1782 request is not mandatory.").

"Once the prima facie [statutory] requirements are satisfied, the Supreme Court in *Intel* noted these factors to be considered in exercising the discretion granted under § 1782(a): (1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' because 'the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is otherwise 'unduly intrusive or burdensome.'" *In re Clerici*, 481 F.3d at 1334 (quoting *Intel*, 542 U.S. at 264–65). None of these factors is required or automatically dispositive — they simply "bear consideration in ruling on a § 1782(a) request." *See Intel*, 542 U.S. at 264. In fact, even if a court concludes an application contains "unduly intrusive or burdensome requests," it may still exercise its discretion to grant the application

because those specific requests "may be rejected or trimmed." *Id.* at 265.

Finally, though the Supreme Court has not specifically listed it as a factor in the analysis, sometimes courts look at how granting or denying a § 1782 application would impact international comity concerns. That is because "the animating purpose of § 1782 is comity: Permitting federal courts to assist foreign and international governmental bodies promotes respect for foreign governments and encourages reciprocal assistance." *ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 632 (2022); *see also In re Pimenta*, 942 F. Supp. 2d 1282, 1289 (S.D. Fla. 2013) (noting "the twin aims of the statute: providing an efficient means of assistance to participants in international litigation and encouraging foreign countries to provide reciprocal assistance to our courts").

**B. Transfer Under 28 U.S.C. § 1404(b), Local Rule 3.8, and Internal Operating Procedure 2.15.00**

Section 1404(b) provides that, "[u]pon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district." 28 U.S.C. § 1404(b). The statute thus makes an intra-district transfer discretionary rather than mandatory. *See id.* Internal Operating Procedure 2.15.00 of the United States District Court for the Southern District of Florida similarly addresses circumstances in which a newly filed matter substantially overlaps with a previously filed matter:

> Whenever an action or proceeding is filed in the Court which involves subject matter which is a material part of the subject matter of another action or proceeding then pending before this Court, or for other reasons the disposition thereof would appear to entail the unnecessary duplication of judicial labor if heard by a different Judge, the Judges involved shall determine whether the higher-numbered action or proceeding shall be transferred to the Judge assigned to the lower-numbered action.

S.D. Fla. I.O.P. 2.15.00.

Local Rule 3.8 makes it mandatory for attorneys of record to promptly notify the Court and opposing counsel of pending, refiled, related, or similar actions or proceedings. *See* S.D. Fla. L.R. 3.8 ("It shall be the continuing duty of the attorneys of record in every action or proceeding to bring promptly to the attention of the Court and opposing counsel the existence of other actions or proceedings as described in Section 2.15.00 of the Court's Internal Operating Procedures, as well as the existence of any similar actions or proceedings then pending before another court or administrative agency. Such notice shall be given by filing with the Court and serving a 'Notice of Pending, Refiled, Related or Similar Actions,' containing a list and description thereof sufficient for identification.").

Thus, the transfer inquiry is principally concerned with avoiding unnecessary duplication of judicial labor where materially related proceedings are pending before different judges. *See S.E.C. v. Regions Bank*, No. 09-CV-23847, 2010 WL 3632769, at *2 (S.D. Fla. Sept. 1, 2010) (recognizing that it is within the discretion of the judges involved to determine whether transfer would avoid excessive judicial labor); *see also Enivert v. Progressive Select Ins. Co.*, No. 14-CV-60557, 2014 U.S. Dist. LEXIS 193712, at *3 (S.D. Fla. Apr. 28, 2014) (recognizing the discretionary nature of transfer and considering whether reassignment would meaningfully conserve judicial resources).

## III. DISCUSSION

### A. The Application and Motion to Grant

The Court conducts the § 1782 analysis in two steps. *First*, the Court determines whether Applicant satisfies the statute's four threshold requirements. *Second*, because Applicant does so, the Court considers whether the four discretionary *Intel* factors favor exercising the Court's authority to permit the requested discovery. The Court addresses each in turn.

**1. Applicant Satisfies the Four Requirements of § 1782**

Applicant argues that all four statutory prerequisites are met because it is the plaintiff in the 2024 Austrian Special Audit Proceeding, it seeks documentary and testimonial evidence, the evidence is sought for use in that pending Austrian proceeding, and all ten Discovery Targets are found in this District. *See* ECF No. [1] at 11–15; ECF No. [7] at 12–16. The Starwood Entities do not contest that Applicant satisfies these threshold requirements. *See generally* ECF No. [14] at 9–20; ECF No. [21] at 1. The record independently confirms that each requirement is satisfied.

*First*, the request is made by an "interested person." § 1782(a); *In re Clerici*, 481 F.3d at 1331. Applicant commenced the 2024 Austrian Special Audit Proceeding and is the plaintiff in that action. *See* ECF No. [1] at 2, 11–12. A litigant in the foreign proceeding falls squarely within § 1782's "interested person" requirement; indeed, the Supreme Court has explained that "litigants are included among, and may be the most common example of, the 'interested persons' who may invoke § 1782." *Intel*, 542 U.S. at 256. The first statutory requirement is therefore satisfied.

*Second*, Applicant seeks qualifying "evidence" within the meaning of § 1782. *See In re Clerici*, 481 F.3d at 1331–32. The Application seeks both documentary production and testimonial evidence from the Discovery Targets through subpoenas directed to records custodians and corporate representatives. *See* ECF No. [1] at 8–9, 12. Requests for documents and deposition testimony are precisely the forms of evidence the statute contemplates. *See* § 1782(a). The second statutory requirement is also satisfied.

*Third*, the evidence is sought "for use in a proceeding in a foreign or international tribunal." *Id.*; *In re Clerici*, 481 F.3d at 1332. The 2024 Austrian Special Audit Proceeding is presently pending before the Commercial Court in Vienna, Austria. *See* ECF No. [1] at 2–3. Applicant seeks evidence relating to Starwood's alleged ownership, control, influence, communications, and

conduct concerning CA Immo, SOF-11, the supervisory board, the management board, and the matters implicated by the four Special Audit requests. *See id.* at 6–10. Those subjects bear directly upon Applicant's allegations in the Austrian litigation concerning whether SOF-11 was conflicted when it voted on the challenged resolutions and whether the resolutions declining the requested Special Audits should be nullified. *See id.* at 6–10. Moreover, Applicant has demonstrated the practical ability to place the requested evidence before the Austrian court. Applicant's Austrian counsel represents that documents and deposition testimony procured through § 1782 may be submitted to the Commercial Court as exhibits at hearings, with written submissions, through the court's electronic system, or through a standalone documentary submission. *See* ECF No. [1] at 9–10; ECF No. [1-12] at ¶¶7–8. The requested evidence can therefore "be employed with some advantage or serve some use" in the Austrian proceeding. *See In re Application of Salem*, 2024 WL 4464288, at *10. Thus, the third statutory requirement is satisfied.

*Fourth*, the persons and entities from whom Applicant seeks discovery reside or are "found" in this District. § 1782(a); *In re Clerici*, 481 F.3d at 1332. Applicant represents that each of the ten Discovery Targets maintains its principal place of business in Miami Beach, Florida and is qualified to conduct business in Florida. *See* ECF No. [1] at 12–13. The Starwood Entities have appeared in this proceeding and do not contest that they are found within this District for purposes of § 1782. *See* ECF No. [14]. The Eleventh Circuit has held that an entity that maintains an office and does business in Miami is "found" in the Southern District of Florida for § 1782 purposes. *Consorcio Ecuatoriano*, 747 F.3d at 1269. Accordingly, the fourth statutory requirement is likewise satisfied.

The Court therefore finds that Applicant has established all four statutory prerequisites for relief under § 1782 and moves on to analyze the *Intel* factors.

**2. The *Intel* Factors Weigh in Favor of Granting the Application**

Because the statutory prerequisites are satisfied, the Court next considers whether the four *Intel* factors favor exercising its discretion to authorize the requested discovery. *See Intel*, 542 U.S. at 264–65; *In re Clerici*, 481 F.3d at 1334. The Starwood Entities expressly challenge the first and fourth factors but do not dispute Applicant's showing as to the second and third factors. *See* ECF No. [14] at 9–20; ECF No. [21] at 1. After considering the Parties' arguments and the record, the Court finds that the factors collectively favor granting the Application.

**a. Participation in the Foreign Proceeding**

The first *Intel* factor considers whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264. The distinction matters because a foreign tribunal ordinarily may compel parties appearing before it to produce evidence, whereas "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.* Applicant emphasizes that none of the ten Starwood Entities is a party to the 2024 Austrian Special Audit Proceeding and that none is subject to the Austrian court's subpoena power. *See* ECF Nos. [1] at 8–9, 14; [7] at 14; [21] at 2–6. Applicant therefore contends that this is precisely the circumstance in which § 1782 assistance is most useful. *See id.*

The Starwood Entities acknowledge that they are not parties to the 2024 Austrian Special Audit Proceeding but argue that the Court should look beyond their formal nonparty status. *See* ECF No. [14] at 15–16. They contend that Applicant is actually seeking information concerning CA Immo and SOF-11 —entities that can be reached through foreign procedures — and is using the U.S.-based Starwood Entities as a conduit to obtain information that could instead be sought abroad. *See id.* The Starwood Entities emphasize that Applicant has not first sought comparable

discovery from CA Immo or SOF-11. *See id.* at 16. Relying principally on *In re Hranov*, they argue that the first *Intel* factor should weigh against relief when the nominal U.S. discovery target merely serves as a vehicle for obtaining a foreign litigant's records. *See id.* at 15–16.

Applicant responds that § 1782 contains no foreign-discovery exhaustion requirement and that an applicant need not first attempt to obtain the same material abroad before requesting judicial assistance in the United States. *See* ECF No. [21] at 2–4. Applicant also distinguishes *Hranov*, arguing that the U.S. entity there was a subsidiary and passive holding company that would have needed to obtain the requested records from its foreign parent, whereas Applicant alleges the opposite structure here: Starwood is the U.S.-based ultimate parent and decision maker, and Applicant seeks documents already within Starwood's own possession, custody, or control concerning Starwood's own activities and alleged influence over CA Immo. *See id.* at 4–6. Applicant further notes that the Starwood Entities are legally distinct from CA Immo and SOF-11 and remain outside the Austrian court's compulsory jurisdiction. *See id.*

The Court agrees with Applicant that the first factor favors relief. It is undisputed that the Discovery Targets themselves are not participants in the 2024 Austrian Special Audit Proceeding and are outside the Austrian court's compulsory reach. *See* ECF No. [1] at 8–9; ECF No. [14] at 15–16; ECF No. [21] at 2. The fact that Applicant may be able to seek some related information from CA Immo or another foreign entity does not convert the U.S.-based Discovery Targets into participants in the Austrian proceeding.

Nor does § 1782 impose an exhaustion requirement obligating Applicant to pursue every conceivable avenue of discovery in Austria before seeking evidence from nonparticipants in this District. *See In re Petrus Advisers Invs. Fund, L.P. by Petrus Advisers Invs. Gen. Partner, Inc.*, No. 22-CV-22437, 2023 WL 3871614, at *5 (S.D. Fla. Mar. 9, 2023), *report and recommendation*

*adopted sub nom. In re Petrus Advisers Invs. Funds, L.P.*, No. 22-CV-22437, 2023 WL 3673372 (S.D. Fla. May 26, 2023); *Gyptec, S.A. v. Hakim-Daccach*, No. 16-20810-CIV, 2017 WL 6557425, at *7 (S.D. Fla. Sept. 27, 2017). To hold otherwise would add a prerequisite that Congress did not place in the statute. *See Petrus Advisers*, 2023 WL 3871614, at *5; *Gyptec*, 2017 WL 6557425, at *7. Moreover, on this record, Applicant seeks at least substantial categories of documents concerning the Starwood Entities' own alleged conduct, communications, influence, and decision-making. *See* ECF No. [1] at 6–10; ECF No. [21] at 5–7. Whatever later objections may arise as to particular requests seeking documents outside a Discovery Target's possession, custody, or control, those request-specific issues do not negate the undisputed fact that the Discovery Targets themselves are nonparticipants beyond the Austrian court's subpoena power. Accordingly, the first *Intel* factor weighs in favor of granting the Application.

**b. Nature and Receptivity of the Foreign Tribunal**

The second *Intel* factor examines "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. Applicant contends that the Commercial Court in Vienna is receptive to evidence gathered through § 1782 and supports that contention with a declaration from Austrian counsel. *See* ECF No. [1] at 9–10, 14; ECF No. [1-12] at ¶¶7–8. The declaration explains that Austrian law permits evidence obtained abroad to be submitted to the court through written submissions, as exhibits, through the court's electronic system, or at a hearing. *See* ECF No. [1-12] at ¶¶7–8. Applicant also notes that this District, in *Petrus I,* previously authorized § 1782 discovery for use in Austrian proceedings. *See Petrus Advisers*, 2023 WL 3871614, at *5. The Starwood Entities do not contest this factor. *See* ECF No. [14] at 9–20. And nothing in the record suggests that the Commercial Court in Vienna would

reject evidence merely because Applicant obtained it through § 1782. To the contrary, the declaration submitted by Applicant provides affirmative support for the Austrian court's receptivity. *See* ECF No. [1-12] at ¶¶7–8. Accordingly, the second *Intel* factor weighs in favor of granting the Application.

**c. Circumvention of Foreign Proof-Gathering Restrictions or Policies**

The third *Intel* factor considers whether the Application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. Applicant represents that Austrian law contains no rule prohibiting it from obtaining evidence through § 1782 and that the Commercial Court has entered no order barring Applicant from using foreign discovery. *See* ECF No. [1] at 9–10, 15. Applicant's Austrian counsel likewise states that evidence obtained through U.S. judicial assistance may be submitted in the Austrian proceeding. *See* ECF No. [1-12] at ¶¶7–8. Again, the Starwood Entities do not challenge Applicant's showing under the third factor. *See* ECF No. [14] at 9–20. Their contention that Applicant could pursue certain evidence through Austrian procedures is materially different from showing that Applicant is attempting to circumvent an Austrian prohibition or policy. Section 1782 does not require the discovery sought in the United States to be discoverable under foreign law, and the record contains no evidence that Applicant is attempting to evade an Austrian proof-gathering restriction. Accordingly, the third *Intel* factor weighs in favor of granting the Application.

**d. Whether the Discovery Is Unduly Intrusive or Burdensome**

Under this fourth *Intel* factor, the Court examines whether the requested discovery is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. Section 1782 itself contemplates application of the Federal Rules of Civil Procedure, and the familiar principles of Rules 26 and 45

therefore inform the inquiry. *See* § 1782(a).

Applicant contends that its subpoenas seek evidence concerning specific subjects and a defined time period relevant to the 2024 Austrian Special Audit Proceeding. *See* ECF No. [1] at 15. Applicant further argues in Reply that, because no subpoenas have yet issued in this proceeding, no request-specific objections have been asserted, the actual scope of compliance has not been determined, and no costs attributable to compliance with the proposed subpoenas have been incurred. *See* ECF No. [21] at 7–8. Applicant therefore argues that requests for protective relief and prospective cost-shifting are premature and states that it is willing to meet and confer in good faith to narrow the requests where appropriate. *See id.* at 7–11.

The Starwood Entities represent that, in *Petrus I*, seven prior subpoenas containing 200 document requests resulted in production of 8,842 documents totaling 32,576 pages, more than 2,000 hours of attorney and in-house e-discovery professional time, and tens of thousands of dollars in additional e-discovery expenses. *See* ECF No. [14-1] at ¶¶11–15, 29–31. They further represent that 161 of the 284 requests in the present subpoenas overlap wholly or partially with requests made in *Petrus I*. *See id.* at ¶¶32–34. Based on that history, the Starwood Entities contend that requiring another round of discovery would impose substantial and disproportionate expense on nonparties. *See* ECF No. [14] at 10–14.

The Starwood Entities alternatively ask the Court to eliminate overlapping requests, limit any discovery to matters uniquely connected to the 2024 shareholder meeting, restrict custodians and temporal parameters, require negotiation of search terms, and shift or require advance payment of their compliance costs. *See* ECF No. [14] at 17–20. They also expressly preserve their right to make request-specific objections under Rule 45 if subpoenas are authorized. *See id.* at 16–17 n.6.

The Court starts its analysis on this factor by acknowledging the Starwood Entities'

concerns about undue burden and expense and does not minimize them in this Order. The number of requests, degree of asserted overlap, and prior expense will, no doubt, require careful attention as discovery proceeds, but the record does not persuade the Court that those concerns justify denying § 1782 assistance at the threshold. *First*, the current Application concerns a distinct Austrian proceeding filed in 2024, notwithstanding its factual relationship to the three Austrian proceedings underlying *Petrus I*. See ECF No. [1] at 2–3; ECF No. [21] at 7 n.7. The new proceeding challenges resolutions adopted at the May 2024 general meeting and encompasses allegations and a temporal period extending beyond the proceedings that formed the basis of the *Petrus I* § 1782 application. *See* ECF No. [1] at 6–8. Some factual and documentary overlap is therefore unsurprising but overlap alone does not establish that every overlapping request is cumulative, irrelevant, or disproportionate.

*Second*, the Court is presently deciding whether § 1782 discovery may proceed — not adjudicating a motion to compel compliance with every one of the 284 document requests. No subpoena has issued as of yet; therefore, no request-specific Rule 45 objections have been lodged or adjudicated, and the Parties have not yet completed the ordinary meet-and-confer process concerning the scope of compliance. *See* ECF No. [21] at 7–8; ECF No. [14] at 16–17 n.6. The Starwood Entities themselves recognize that they have not attempted in their Response to lodge every relevance, proportionality, or overbreadth objection to each of the 284 requests and seek the opportunity to assert those objections if the subpoenas issue. *See* ECF No. [14] at 16–17 n.6.

*Third*, the Supreme Court expressly contemplated that a court may authorize § 1782 assistance even when particular requests later prove overbroad because unduly intrusive or burdensome requests "may be rejected or trimmed." *Intel*, 542 U.S. at 265. The Federal Rules of Civil Procedure likewise remain available to protect the Discovery Targets from undue burden or

expense. *See* Fed. R. Civ. P. 26(b)(1), 26(c), 45(d). Granting the Application therefore does not constitute a ruling that every request as presently worded is immune from objection, nor does it preclude later modification, limitation, protective relief, or an appropriate allocation of significant compliance expenses upon a developed record.

*Fourth*, the prospective cost-shifting request is better addressed, if necessary, after the scope and actual expense of compliance are more concrete. The Starwood Entities have provided detailed evidence of what *Petrus I* cost, but their estimate of the current compliance costs necessarily depends on scope determinations, the extent to which prior collections can be reused, the custodians and search methodology ultimately employed, and the degree to which the Parties narrow duplicative requests through conferral. *See* ECF No. [14-1] at ¶¶32–34. Applicant has expressly represented that it is willing to engage in good-faith efforts to minimize burden and expense. *See* ECF No. [21] at 7, 11. The Court expects both sides to do so.

The Court also finds significant that Applicant's proposed subpoenas already contain an express limitation designed to prevent duplicative production. Specifically, the subpoenas provide that, "[t]o the extent otherwise responsive documents were previously produced in *In Re Application of: Petrus Advisers Investments Fund, L.P.*, Case No. 22-MC-22437-BLOOM, those documents need not be re-produced." ECF No. [1-2] at 7; *see also* ECF No. [7] at 16. Thus, although the Starwood Entities contend that 161 of the 284 requests overlap wholly or partially with requests made in *Petrus I*, *see* ECF No. [14-1] at ¶¶32–34, the existence of overlapping requests does not necessarily require the Starwood Entities to undertake a duplicative production of documents. Indeed, on this point, the Parties' positions substantially converge: Applicant has expressly disclaimed any requirement that previously produced responsive documents be produced again, while the Starwood Entities ask the Court to protect them from duplicative production. *See*

ECF No. [14] at 17. The Court agrees that requiring reproduction of documents already produced in *Petrus I* would impose needless burden and expense without corresponding benefit. Accordingly, to the extent a document responsive to the subpoenas authorized by this Order was previously produced by the applicable Discovery Target in *Petrus I*, that document need not be produced again. This limitation further mitigates the Starwood Entities' burden concerns and supports the Court's conclusion that the fourth *Intel* factor does not warrant denial of the Application.

Accordingly, on the present record, the fourth factor does not warrant denying the Application. The Court will authorize the requested § 1782 discovery subject to the Federal Rules of Civil Procedure and without prejudice to the Starwood Entities' ability to serve appropriate objections, seek a protective order, move to quash or modify a subpoena, or seek appropriate cost-shifting should a sufficiently developed record establish entitlement to such relief. Of course, the Court expects that the Parties will first engage in a robust, good-faith meet-and-confer process to narrow the disputed issues and will only seek relief as to the specific issues on which the Parties truly cannot agree. The Parties are cautioned though that objections to the subpoenas *in toto* or blanket motions to compel will *not* be reflective of a good-faith meet-and-confer process. Likewise, Applicant must comply with Rule 45's obligation to take reasonable steps to avoid imposing undue burden or expense on nonparties, so the Court will consider whether cost and fee shifting is appropriate, if needed, at a future time with the benefit of additional information from the Parties. *See* Fed. R. Civ. P. 45(d).

Considering the nature and relevance of the evidence sought, the distinct 2024 Austrian Special Audit Proceeding, Applicant's stated willingness to narrow disputed requests, and the procedural safeguards that remain available under the Federal Rules, the Court finds that the

fourth *Intel* factor does not outweigh the considerations favoring § 1782 assistance. *See Intel*, 542 U.S. at 265.

**3. Granting the Application Would Further the Policy Underlying § 1782**

Granting the Application is also consistent with § 1782's underlying policy of international judicial assistance and comity. *See ZF Auto.*, 596 U.S. at 632; *In re Pimenta*, 942 F. Supp. 2d at 1289. Applicant seeks evidence located in this District for use before a conventional foreign court that, according to the unrebutted evidence presented, is receptive to evidence obtained through United States judicial assistance. Permitting such discovery advances Congress's objective of providing efficient federal court assistance to participants in international litigation while encouraging reciprocal cooperation by foreign courts.

In sum, Applicant satisfies each of § 1782's statutory prerequisites, the discretionary *Intel* factors collectively favor granting judicial assistance, and the policies underlying the statute further support relief. The Application, **ECF No. [1]**, and Motion to Grant, **ECF No. [7]**, are therefore **GRANTED**.

**B. The Motion to Transfer**

Applicant separately requests transfer of this action pursuant to 28 U.S.C. § 1404(b) and IOP 2.15.00. *See* ECF No. [13] at 1, 7–8. Applicant contends that this matter and *Petrus I* involve the same Applicant, substantially overlapping Starwood entities, the same Austrian company, the same majority shareholder, closely related allegations concerning Starwood's alleged influence over CA Immo, and significant overlap in the discovery sought. *See id.* at 2–7. Applicant argues that the judicial officers who presided over *Petrus I* have already devoted substantial judicial resources to understanding these relationships and the Parties' discovery disputes and that transfer would therefore prevent duplication of judicial labor and promote consistency. *See id.* at 2, 7–8.

The Starwood Entities oppose transfer. *See* ECF No. [18]. They argue that *Petrus I* is no longer an active proceeding requiring judicial supervision, that the last substantive judicial activity occurred well before the filing of the present action, and that the September 2025 activity in *Petrus I* was limited to an agreed amendment of the protective order permitting prior discovery to be used in the 2024 Austrian Special Audit Proceeding. *See id.* at 2–3. They further argue that the prior judicial pairing has changed and that this Court has already familiarized itself with this action through the pending briefing, diminishing any potential efficiency from transfer. *See id.* at 3–4. In their view, IOP 2.15.00 focuses on avoiding "unnecessary duplication of judicial labor," and transfer at this stage would not accomplish that purpose. *See id.* at 2–5.

Applicant replies that the factual and legal overlap remains extensive notwithstanding the procedural status of *Petrus I*. *See* ECF No. [22] at 1–5. Applicant emphasizes that the prior proceeding generated more than one hundred docket entries and multiple hearings involving substantially the same parties and discovery issues and contends that the knowledge acquired through that work would permit more efficient disposition of this action. *See id.* at 1–4. Applicant further maintains that changes in judicial pairings do not foreclose transfer. *See id.* at 3–5.

The Court need not to issue a separate Report and Recommendation to resolve those competing arguments because the Motion to Transfer is now moot. The primary relief sought in this proceeding is judicial authorization under § 1782 to obtain evidence for use in the 2024 Austrian Special Audit Proceeding. *See* ECF No. [1]. By this Order, the Court has resolved that request and granted both the Application and Motion to Grant. Thus, there is no unresolved § 1782 application whose adjudication could be made more efficient through transfer to the judicial officer who presided over *Petrus I*. Accordingly, because the Court grants the Application and Motion to Grant in this Order, the Motion to Transfer, **ECF No. [13]**, is **DENIED AS MOOT**.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Applicant's Application for Judicial Assistance in Aid of a Foreign Proceeding Pursuant to 28 U.S.C. § 1782, **ECF No. [1]**, is **GRANTED**.
2. Applicant's Motion to Grant 28 U.S.C. § 1782 Petition and Issue Subpoenas, **ECF No. [7]**, is **GRANTED**.
3. Applicant is authorized pursuant to 28 U.S.C. § 1782 to issue and serve the subpoenas for documentary and testimonial evidence attached to the Application and Motion to Grant upon the Discovery Targets identified in the Application.
4. Discovery authorized by this Order shall proceed in accordance with 28 U.S.C. § 1782 and the Federal Rules of Civil Procedure.
5. Nothing in this Order shall be construed as overruling any timely, request-specific objection that a Discovery Target may assert under the Federal Rules of Civil Procedure, nor does this Order preclude an appropriate motion to quash or modify a subpoena, motion for protective order, or request concerning allocation of significant compliance expenses upon a sufficiently developed record.
6. Consistent with the express terms of the subpoenas, the Discovery Targets shall not be required to reproduce documents previously produced in *Petrus I*. To the extent an otherwise responsive document was previously produced in that proceeding, the Discovery Target may identify the document by its prior production or Bates designation in lieu of reproducing the document.
7. Applicant and the Discovery Targets shall confer in good faith concerning any disputed

requests, including reasonable efforts to eliminate duplicative requests of materials previously requested and produced in *Petrus I* and to minimize undue burden and expense before seeking further intervention from the Court.

8. The Court retains jurisdiction to resolve disputes arising from the discovery authorized by this Order and to enter such further orders as are necessary and proper to effectuate the relief granted herein.

9. Applicant's Motion to Transfer Action, **ECF No. [13]**, is **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers in Miami, Florida on August 14, 2026.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All counsel of record